UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| KENNETH W. STONE, | ) | |
| | ) | |
|     *Plaintiff,* | ) | |
| v. | ) | No. 1:04-cv-259 |
| | ) | *Edgar* |
| JOHN WATKINS, Chattanooga Police Officer; | ) | |
| STEVE PARK, Chief of Police of Chattanooga; | ) | |
| CITY OF CHATTANOOGA, | ) | |
| | ) | |
|     *Defendants.* | ) | |

## MEMORANDUM

Kenneth W. Stone ("Stone" or "Plaintiff"), a *pro se* plaintiff, seeks damages from the defendants for deprivation of his civil rights under color of state law pursuant to 42 U.S.C. § 1983. Stone's action arises from his arrest on July 9, 2004. Specifically, Stone claims Officer John Watkins ("Officer Watkins") used excessive and unreasonable force while acting under color of law when he arrested Stone. Stone avers that after he surrendered, Officer Watkins kicked him in the head and ribs while Officer Watkins' K-9 partner, K-9 Blade, held him in a bite and that, after handcuffing plaintiff, Officer Watkins continued to give commands to K-9 Blade to attack Stone. Stone claims the excessive and unreasonable forced allegedly used by Officer Watkins deprived him of his right to be free from the use of such force, as guaranteed to him by the Fourth and Fourteenth Amendments to the United States Constitution.

For these alleged constitutional violations, plaintiff seeks $250,000.00 from Officer John Watkins, $850,000.00 from Chief Steve Parks, and $85,000.00 from the City of Chattanooga.

Presently before the Court is defendants' motion for summary judgment [Court File No.21-1]

1

and plaintiff's response [Court File No. 33]. For the reasons set forth herein, defendants' motion for summary judgment will be denied in part and granted only as to that part of the motion in which the City of Chattanooga seeks summary judgment on plaintiff's claim for punitive damages [Court File No. 21-1].

**I.      Standard of Review**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id*. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907. Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence

to support its claim. *Celotex,* 477 U.S. at 324; *Lansing Dairy*, *Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994), *cert. denied*, 516 U.S. 806 (1995); *Horsemen's Benev. & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

**II.     Facts**

On July 9, 2004, Officer Watkins was patrolling on Rossville Boulevard in a marked patrol car. It is undisputed that Officer Watkins observed a vehicle make an illegal turn into traffic, nearly causing an accident with oncoming traffic. It is also undisputed that the license plate on the vehicle driven by Stone had expired in 2000. Officer Watkins contends that, based on his police experience and training, he determined that the vehicle could be stolen, and based on that suspicion, the expired registration, and the traffic violation, he activated his emergency equipment and attempted to stop the vehicle.

Admitting he was driving a stolen vehicle and that he attempted to evade police, Stone contends that even though he had surrendered to Officer Watkins and was then restrained by handcuffs, Officer Watkins kicked and stomped him in the head and ribs and K-9 Blade bit him several times. Stone also denies that he fought the dog or Officer Watkins and points to the location and type of wounds he received as proof that K-9 Blade remained behind him during the entire

3

incident.

According to his deposition testimony the episode unfolded as follows: Stone exited the vehicle and ran. Officer Watkins ordered him to halt and warned him that if he did not the dog would be released. As he fled, Stone stepped in a hole and fell and the dog grabbed his elbow. Officer Watkins then approached his left side, kicked him in the ribs, and put his heel on the back of Stone's head and the dog grabbed his right jaw area [Court File No. 22-2, p. 6-7]. At this point, Officer Watkins handcuffed Stone and the dog bit his shoulder and ripped his ear. Stone told Officer Watkins, "Go ahead and shoot me in the back of the head, don't let this dog kill me." [Court File No. 22-2, p. 9]. After he surrendered and was handcuffed, Officer Watkins kept encouraging K-9 Blade to bite him [Court File No. 22-2, at 10 & 12].

Stone was transported by ambulance to Erlanger Emergency Room and treated for injuries. On April 17, 2005, Stone entered a plea of *nolo contendere* to the charges of reckless driving, resisting arrest, driving on a revoked license, evading arrest, and theft in excess of $1,000.00 in connection with this incident.

Stone claims he suffered several wounds as a result of the canine bites, including: (1) a puncture wound in his neck; (2) a bite on his right elbow; (3) a puncture wound on his arm; (4) an abrasion(s) in his scalp area; and (5) a tear to his left ear. As a result of being kicked by Officer Watkins, Stone maintains he sustained a laceration on his head [Court File No. 3].

Officer Watkins' affidavit testimony as to the initial stop essentially replicates that of Stone's. At this point, however, the testimony departs dramatically from Stone's. Officer Watkins avers his K-9 partner, Blade, knocked Stone to the ground by jumping on his back. The K-9 bit Stone on his head and ear only after Stone attempted to hit him with a wrench. Officer Watkins

4

maintains he immediately called K-9 Blade off but when he attempted to handcuff Stone, he began swinging the wrench at him again so K-9 Blade bit the plaintiff in the left trapezius area next to his neck. According to Officer Watkins, Stone continued fighting and swinging until K-9 Blade lost his bite on the trapezuis area, at which time K-9 Blade grabbed Stone's right elbow causing plaintiff to release the wrench [Court File No. 25, p.2-3]. However, Officer Watkins claims plaintiff attempted to get up at which time K-9 Blade bit Stone on the side of his face. Officer Watkins avers he immediately called K-9 Blade off and handcuffed Stone [Court File No. 25].

The record also consists of documentation of an internal affairs investigation ("IA") which reflects Officer Watkins' initial version of Stone's arrest. According to Officer Watkins, Stone exited the vehicle armed with a wrench in his right hand when he fled on foot. Officer Watkins chased Stone on foot and was within 15 feet of him when he ordered him to drop the wrench. Stone ignored Officer Watkins' commands to stop. Officer Watkins remotely released his K-9 partner and the dog came to him. Officer Watkins ordered Stone to drop the wrench four times and when he did not comply he gave a command to K-9 Blade to take down Stone. Stone attempted to strike K-9 Blade several times with the wrench before the animal was able to dislodge the wrench from his grasp. Officer Watkins submitted a wrench to the property section identifying it as the weapon carried by Stone.[1]

The report reflects the IA investigator doubted both Stone's and Officer Watkins' credibility. Stone apparently asserted he was driving the vehicle in a normal manner prior to stopping. The investigator found the videotape that was mounted on Officer Watkins''s vehicle, clearly

---

[1] The Court did not observe a wrench in Stone's possession or in Officer Watkins' possession as Officer Watkins retreated from the location where plaintiff was arrested.

demonstrated Stone was recklessly fleeing from an attempted traffic stop when he ran into a curb and subsequently fled on foot [Court File No. 32].

The IA investigator also found Officer Watkins' statement alleging Stone was armed with a wrench in his right hand when he exited the vehicle to be untrue based upon the videotape that was mounted on Officer Watkins' vehicle clearly demonstrating both of Stone's hands were empty when he exited the vehicle. The investigator states the wrench is visible in Stone's back pocket.[2] The investigator also found Officer Watkins' claim that he released his K-9 and the animal came to him and stayed with him until he commanded the animal to engage Stone to be untrue because the tape clearly shows the animal runs towards Officer Watkins, passes him, and continues running until it takes Stone down [Court File No. 32]. Once the K-9 overtook Stone they were at a distance such that the tape does not reflect whether Stone was armed with a wrench or whether he attempted to strike the K-9 with an object. Officer Watkins did not activate the audio capability of his recording equipment so the tape does not reveal whether Officer Watkins did in fact tell Stone to drop the wrench numerous times.

**III.    Analysis**

Defendants bring this motion for summary judgment against plaintiff claiming there are no material issues of fact as to the liability of any of the defendants. Defendants assert Stone is not entitled to relief on his claim that the City of Chattanooga failed to properly train and supervise its employees; that Chief Steve Parks and Officer Watkins are entitled to qualified immunity; Chief Parks is not liable as a supervisor; that Stone is prohibited from asserting excess force since he pleaded *nolo contendere* to reckless driving, resisting arrest, driving on a revoked license, evading

---

[2] The Court is unable to see a wrench in plaintiff's back pocket.

arrest, and theft in excess of $1,000.00 in connection with this incident; and that plaintiff is not entitled to punitive damages.

      **A.**     <u>**Official Capacity--Policy, Custom, or Practice of the City of Chattanooga**</u>

In seeking summary judgment, the defendants contend that to the extent Stone's complaint is based upon an alleged failure to properly train and supervise its employees by the City of Chattanooga, the defendant City of Chattanooga is entitled to summary judgment. Additionally, Officer Watkins and Chief Parks assert they are entitled to summary judgment to the extent they are sued in their official capacities. Defendants contend Stone failed to allege in his complaint or deposition any deliberate indifference on behalf of the City of Chattanooga, thus entitling them to summary judgment. Defendants maintain Stone cannot establish deliberate indifference or injuries which were proximately caused by any unconstitutional policy, custom or practice of the City of Chattanooga [Court File No. 22-1].[3]

In this action, liberally construing the *pro se* plaintiff's allegations as the Court is required to do, Stone alleges the City of Chattanooga and Chief Parks failed to react to repeated complaints of constitutional violations by Officer Watkins.

      42 U.S.C. § 1983 provides in relevant part

      Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

      Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

---

[3] The United States Supreme Court has rejected the contention that only unconstitutional policies are actionable under 42 U.S.C. § 1983. *See Canton v. Harris*, 489 U.S. 378, 386-87 (1989).

7

Case 1:04-cv-00259   Document 39   Filed 11/15/05   Page 7 of 19   PageID #: 39

In order to prevail on a claim for a violation of civil rights under 42 U.S.C. § 1983 a plaintiff must establish: (1) he was deprived of a right secured by the Federal Constitution or laws of the United States and (2) that the aforesaid deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To impose liability on a governmental entity, such as the City of Chattanooga under 42 U.S.C. § 1983, a plaintiff must show that there was some official governmental policy or custom in place that violated his constitutional rights; a governmental entity cannot be held liable under § 1983 for the acts of its employees under a theory of *respondeat superior*. *Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978).

"To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3rd Cir. 1990)(citing *Monell*, 436 U.S. at 692-95). Section 1983 liability will attach to a municipality when a plaintiff can demonstrate that execution of a government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury. *Id.* (quoting *Monell*, 436 U.S. at 694). The burden is on the plaintiff to show that a policymaker is responsible either for the policy or through acquiescence, for the custom. *Id.* (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989).

There are two ways to establish a policy or custom. A policy is established when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues either an official policy, proclamation, or edict. *Andrews*, 895 F.2d at 1480 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A course of conduct will be considered to be a custom when, even though not authorized by law, "such practices of state officials [are] so

8

permanent and well settled" as to virtually constitute law. *Id*. (citing *Monell*, 436 U.S. at 690).

The adequacy of police training may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). There are two types of situations in which a court can find deliberate indifference in the failure to train police officers. One is the situation where a city fails to react to repeated complaints of constitutional violations by its officers. *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003). This is the issue before the Court in the instant case. The second situation occurs when the city fails to provide adequate training in light of foreseeable serious consequences that could result from lack of instruction. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir.), *cert. denied*, 528 U.S. 966 (1999). Therefore, when the need to train is so obvious that the failure to do so could properly be characterized as deliberate indifference to constitutional rights, liability against a municipality under § 1983 is proper. *See Tennessee v. Garner,* 471 U.S. 1 (1985).

Liberally construing the *pro se* plaintiff's complaint in the instant case as the Court is required to do, it appears Stone is claiming the city failed to properly react to repeated complaints of constitutional violations by Officer Watkins, which is arguably characterized as the city's deliberate indifference to the constitutional rights of its citizens. Although defendants contend that Stone is unable to establish advance knowledge that Officer Watkins misused K-9 Blade, Stone has provided documentation that appears to reflect Officer Watkins was disciplined on at least two different occasions in 2003 on claims related to excessive force [Court File No. 32]. It appears that Case No. 2002-119 involved conduct concerning allegations against Officer Watkins for use of force/injury and he received a two-day suspension without pay. The final disposition of File No.

02-140 reflects Officer Watkins violated the department's policy regarding firing at a fleeing felony suspect. The record is unclear about the specifics of a third excessive force complaint, however, in the IA report, the investigator noted that "[t]here is also currently a third excessive use of force allegation and an untruthfulness allegation which has been recommended as sustained but has not been finalized through the disciplinary process" [Court File No. 32].

In addition, the internal investigation report of the instant incident reflects there were multiple policy violations by Officer Watkins. The investigator found the release of his canine appeared to be improper; Officer Watkins did not know the car was stolen; and there was nothing in Stone's hands when he exited the vehicle. Based on those facts, the investigator concluded Officer Watkins released his animal on a fleeing misdemeanant who was unarmed and not a threat. The investigator noted Officer Watkins' use of force report regarding this incident included the false statement that Stone was armed with a wrench in his hand when he exited the vehicle. In addition, the investigator noting that Officer Watkins has two previously sustained allegations of excessive use of force recommended that all three charges *i.e.*, use of force/injury, untruthfulness/IA investigation, and filing false reports, alleged against Officer Watkins in this matter be sustained. Deputy Chief T.E. Vaughn recommended that Officer Watkins' employment with the department be terminated [Court File No. 32]. In addition, William Shelley Parker, Jr., Legal Advisor to the Chattanooga Police Department, agreed with the findings and recommendations of the Internal Affairs report pertaining to Stones' complaint [Court File No. 32]. However, Chief Parks, after conducting a full hearing, determined that none of the allegations against Officer Watkins should be

10

sustained [Court File No. 24]. Nothing in the record before the Court reflects the reasons for Chief Parks' decision.[4]

Defendants contend it is clear from the undisputed affidavits of Chief of Police Steve Parks and Lon Eilders, the Manager in charge of the Accreditation and Standards of the Chattanooga Police Department, that the City of Chattanooga did not have an officially executed policy, or tolerate a custom within the City that led to, caused, or resulted in the deprivation of the plaintiff's constitutionally protected rights. Stone's response to the defendant's motion for summary judgment [Court File No. 33] along with the Internal Affairs documents, raises a genuine issue of material fact as to whether the City of Chattanooga and Chief Steve Parks failed to properly react to repeated complaints of alleged constitutional violations of Officer Watkins, thus, tolerating Officer Watkins' use of excessive force when arresting citizens, which led to, caused, or resulted in the deprivation of Stone's constitutionally protected rights.

Accordingly, because there are disputed issues of fact as to whether the City of Chattanooga and Chief Steve Parks possessed advance knowledge that Officer Watkins used excessive force when effecting arrests and whether they failed to properly react to repeated complaints of alleged constitutional violations of Officer Watkins, defendants' motion for summary judgment on this claim will be **DENIED**.

---

[4] A police chief was found individually liable for ratifying the excessive use of force by officers under his command by signing a letter denying a victim's complaint of excessive force when expert testimony showed he should have disciplined the officers and established new police procedures. *See Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).

11

## B. Qualified Immunity

Chief Steve Parks and Officer Watkins claim they are entitled to summary judgment to the extent they are sued in their individual capacities based upon qualified immunity. Officer Watkins contends his decision to deploy his canine partner was reasonable under the circumstances.

In addressing qualified immunity claims, *Saucier v. Katz*, 533 U.S. 194 (2001) instructs that the Court must first determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201. If Stone establishes that a constitutional violation occurred, then the Court must determine whether "the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.*; *see also Brosseau v. Haugen,* 543 U.S. 194 (2004) (reasonableness of officer's conduct is judged against the law at the time of the conduct). If the law at the that time did not clearly establish that Officer Watkins' conduct would violate the Constitution, then he should not be subject to liability or the burdens of litigation.

Claims that law enforcement officers used excessive force when effecting an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of an officer's actions is judged from the perspective of the officer on the scene, rather than with hindsight. *Id.* at 396. When evaluating a claim of excessive force, a court must determine reasonableness by considering the severity of the crime involved, the threat to the safety of the officer posed by the suspect, and any resistance to arrest. *Id*. The proper analysis of Stone's claim of excessive force is under the Fourth Amendment because it allegedly occurred in connection with a stop and arrest; thus, it is considered under the Fourth Amendment "reasonableness" standard identified in *Graham v. Connor*.

12

The defendants' assertions of qualified immunity requires the Court to determine, in light of clearly established principles governing arrests and the use of excessive force, whether Officer Watkins objectively could have believed that his conduct was lawful. The use of excessive force in effecting an arrest is a clearly established violation of the Fourth Amendment. A specific case is not necessary for an officer to know that excessive force has been used when a deputy sics a canine on a defendant who has fully surrendered or on a handcuffed defendant who has fully surrendered and is completely under control. Stone argues the amount of force and the continued application of force applied after he surrendered to Officer Watkins' commands and after he was handcuffed amounted to an unconstitutional application of force.

Officer Watkins denies any use of excessive force. Officer Watkins maintains that Stone was attempting to hit him and his canine with a wrench and all wounds suffered by Stone were the result of Officer Watkins and K-9 Blade attempting to subdue Stone. According to Officer Watkins' affidavit, the only contact he had with Stone was to place handcuffs on him and after the handcuffs were on him, neither Officer Watkins or K-9 Blade made any physical contact with Stone.

Although the reasonableness of Officer Watkins' decision to deploy his canine is questionable according to the IA report, this lawsuit is about Officer Watkins' alleged use of excessive and unreasonable force in arresting Stone after he surrendered. Specifically, the allegations that Officer Watkins kicked and stomped Stone and commanded his canine to bite Stone after Stone had surrendered and while handcuffed.

The parties dispute virtually all of the essential facts surrounding the excessive force claim. Thus it is impossible to determine, without choosing between the parties' sharply different factual accounts, whether the force Officer Watkins used, objectively assessed, was reasonable. Because

13

there are disputed issues of facts as to the sequence of events of when K-9 Blade bit Stone and as to the extent of the force used by Officer Watkins during Stone's arrest and whether that force was reasonable in light of the circumstances, qualified immunity and summary judgment are not appropriate on the excessive force claim.

    **C.**    **Chief Parks-Supervisor Liability Claim**

Chief Steve Parks asserts he is entitled to summary judgment on any supervisory liability claim because he neither encouraged nor directly participated in the alleged use of excessive force by Officer Watkins.

Liability under § 1983 cannot be based on the doctrine of *respondeat superior*. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). However, a supervisor who possesses information indicating a strong likelihood of unconstitutional conduct by his subordinate may be liable. *See Curry v. Scott*, 249 F.3d 493, 505-06 (6th Cir. 2001)(The court concluded summary judgment should be denied because a trier of fact could find, based on the evidence submitted, that the supervisory defendants actually knew the officer posed a substantial risk of harm to prison inmates); *see also Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003) (determined supervisors were not liable because they possessed no information indicating a strong likelihood of unconstitutional conduct by their subordinate). A supervisor may be held liable if he "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005), (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984)).

As Officer Watkins' superior, Chief Steve Parks can be held liable in his individual capacity if he participated in the deprivation of Stone's constitutional rights. Under the circumstances of this case, if Officer Watkins used excessive force, then Chief Parks' liability hinges on whether he possessed information about Officer Watkins showing a strong likelihood that he would use excessive force when arresting citizens, such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of the citizens. *See Hill ex rel. Hill v. McNairy County*, 2004 WL 3327992 (W.D.Tenn. 2004) *citing Doe v. Claiborne County*, 103 F.3d 495, 513 (6th Cir. 1996).

Liberally interpreting Stone's complaint as the Court is required to do since he is proceeding *pro se,* Stone contends that Chief Parks was responsible for adequately training, supervising, and controlling Officer Watkins and the resolution of the previous complaints, as well as the resolution of Stone's complaint, demonstrate Chief Parks knew that Officer Watkins engaged in using excessive force when arresting citizens, and Chief Parks' failure to take adequate precautions amounted to Chief Parks implicitly authorizing, approving, or knowingly acquiescing in Officer Watkins alleged unconstitutional conduct.

Supervisor liability will attach if Chief Parks possessed information revealing a strong likelihood of unconstitutional conduct, *i.e.*, excessive force, by Officer Watkins but did nothing to prevent the misconduct, thereby causing harm to Stone. *See Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002), *cert. denied*, 537 U.S. 1232(2003)(acknowledging that if a plaintiff shows a supervisor possessed information about a subordinate that demonstrated a strong likelihood that the subordinate would violate citizens constitutional rights, a supervisor can be held liable because the failure to take adequate precautions would amount to deliberate indifference to the citizens

15

constitutional rights); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 513 (6th Cir. 1996)(Plaintiff was required to "show the School Board, as an official policymaking body, had a 'custom' that reflected a deliberate, intentional indifference to the sexual abuse of its students"). If Chief Parks possessed information revealing a strong likelihood of unconstitutional conduct (excessive force) by Officer Watkins, then Chief Parks arguably exhibited deliberate indifference to violations of the constitutional rights of the citizens of the City of Chattanooga, specifically Stone.

Taking the facts of the present case in light most favorable to the plaintiff, it is fair to say that it appears that Chief Parks knew, during the relevant time period, that Officer Watkins had at least two previous and one pending excessive force claims.[5] In addition, contrary to the recommendation of the investigator and legal counsel, Chief Parks apparently dismissed Stone's complaint.[6] A trier of fact could hold Chief Parks liable for constitutional deprivations if Stone demonstrates that Chief Parks was responsible for the constitutional deprivations because he condoned, ratified, or encouraged the excessive use of force by Officer Watkins.

To satisfy the supervisory liability test, Stone must prove that Chief Parks knew Officer Watkins previously engaged in using excessive force when arresting defendants. If the trier of fact finds that Chief Parks did know of Officer Watkins' alleged prior incidents of excessive force, Stone may be able to prove that his failure to take appropriate disciplinary action to prevent future

---

[5] There is nothing in the record to indicate whether or not the two prior complaints are the only prior complaints against Officer Watkins for excessive use of force.

[6] A denial of qualified immunity to a police chief was affirmed where the chief signed an internal affairs report dismissing a complaint despite evidence of the officer's use of excessive force contained in the report and evidence of the officers's involvement in other police dog bite incidents without ascertaining whether the circumstances of the cases required some action to avoid future similar excessive force claims.

16

incidents demonstrates deliberate indifference and thus, was a tacit authorization of Officer Watkins' conduct. *Cahill v. Walker*, 2005 WL 1566494, *3 (E.D. Tenn. 2005)(Denying summary judgment, the court observed that if it "finds that Chief Montgomery did know of Officer Walker's alleged prior incidents of sexual harassment and assault, Plaintiff may be able to prove that his failure to take disciplinary action to prevent future incidents demonstrated 'deliberate indifference' and thus was a 'tacit authorization' of Officer Walker's misconduct."); *see also Curry v. Scott*, 249 F.3d 493, 505-06 (6th Cir. 2001)(The court concluded summary judgment should be denied because a trier of fact could find, based on the evidence submitted, that the supervisory defendants actually knew the officer posed a substantial risk of harm to prison inmates).

Accordingly, issues of material fact preclude summary judgment in Chief Parks' favor. It appears that a trier of fact could find, based on the evidence submitted, that Chief Parks knew Officer Watkins posed a substantial risk of serious harm to arrestees.

### D. Doctrine of Collateral Estoppel

Defendants contend that since Stone entered a plea of *nolo contendere* to the charges of reckless driving, resisting arrest, driving on a revoked license, evading arrest, and theft in excess of $1,000.00 in connection with this incident he is prohibited from asserting that Officer Watkins used excessive and unreasonable force. Defendants rely upon a recent Sixth Circuit case, *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir., 2005), where the court determined Cummings' success on his federal constitutional claim of excessive force would necessarily imply the invalidity of his state court misdemeanor assault conviction, thus barring him from pursuing his excessive force claim.

In the instant case, although the facts at this juncture are not entirely clear and only a portion of Stone's deposition is before the Court, Stone stated in his deposition that he is "not claiming that

17

he [Officer Watkins] didn't use the right amount of force at the beginning" [Court File No. 22-2, at 3]. Based on that statement and claims of excessive force subsequent to his surrender, arguably, Stone is claiming that the excessive force he is complaining about occurred after he surrendered and he is not complaining about the amount of force initially used when he was evading or resisting arrest. The lack of clarity in the record presents a question of material fact. Furthermore, regardless of a defendant's resistance, a police officer is never authorized to use excessive and unreasonable force to subdue a defendant, but rather, an officer may only use that force which is necessary to subdue a defendant. Moreover, the relevant policy in the Chattanooga Police Department-Policy Manual, ADM-5-Use of Force [Court File No. 21-2, Exhibit 1] authorizes officers to use only the minimal amount of force which is necessary under the circumstances they confront.

Stone contends that Officer Watkins used excessive and unreasonable force after he surrendered. Based on the state of the record before the Court, a finding for Stone on his claim that Officer Watkins used excessive force would not necessarily imply the invalidity of his *nolo contendere* plea to evading and resisting arrest because, as the Court reads the complaint, Stone is not challenging any force used by Officer Watkins prior to Stone's surrender. The defendants have failed to demonstrate that no genuine issue of material fact exists, thus, their motion for summary judgment on this claim is **DENIED**.

### E. Punitive Damages

Defendants contend that the plaintiff is not entitled to any punitive damages from the City, as the City is immune from such damages [Court File No. 22-1, at 15]. A municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 272 (1981). Accordingly, that aspect of the defendants' motion for summary judgment [Court

File No. 21] in which the City of Chattanooga seeks a summary judgment on Stone's claims against it for punitive damages will be **GRANTED**.

IV.     **Conclusion**

Accordingly, defendants' motion for summary judgment [Court File No. 21] will be **GRANTED IN PART and DENIED IN PART**.  That aspect of the motion in which the City of Chattanooga seeks summary judgment on Stone's claims against it for punitive damages will be **GRANTED**.  In all other respects the motion for summary judgment will be **DENIED**.

A separate order will enter.

                                        */s/ R. Allan Edgar*
                                        R. ALLAN EDGAR
                                        UNITED STATES DISTRICT JUDGE