UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| KENNETH W. STONE, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> JONATHAN "JON" WATKINS, ) <br> Chattanooga Police Officer; STEVE ) <br> PARKS, Chief of Police of Chattanooga; ) <br> and CITY OF CHATTANOOGA, ) <br> ) <br> *Defendants*. ) | Case No. 1:04-cv-259 <br><br> Judge Mattice |

**MEMORANDUM OPINION**

This is a civil rights matter brought pursuant to 42 U.S.C. § 1983, in which Plaintiff Kenneth W. Stone alleges that Defendant Jonathan Watkins ("Officer Watkins"), a Chattanooga Police Officer, used excessive force against him during his arrest and that Defendants Steve Parks ("Chief Parks") and the City of Chattanooga (the "City") maintained policies that were deliberately indifferent to the rights of persons who would come into contact with Officer Watkins.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Because this action is brought under 42 U.S.C. § 1983, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and all of the events or omissions giving rise to Plaintiff's claims occurred in this district.

Plaintiff resided in Trenton, Georgia, at the time of his arrest in Chattanooga, Tennessee, on July 9, 2004. Plaintiff is presently serving a state prison sentence in the Southeastern Tennessee State Regional Correctional Facility in Pikeville, Tennessee.

The City of Chattanooga is a municipality of the State of Tennessee. The Chattanooga Police Department is a subordinate department of the City. Defendants Officer Watkins and Chief Parks were employees of the Chattanooga Police Department and, with respect to Plaintiff's allegations, were acting under color of state law.

The facts which led to the instant case arose on July 9, 2004, when Officer Watkins attempted to conduct a traffic stop on a vehicle being driven by Plaintiff. Plaintiff initially refused to pull his vehicle over in response to Officer Watkins' emergency equipment. After leading Officer Watkins on a chase, Plaintiff eventually stopped his vehicle when it collided with the curb and hit a pole. Upon stopping, Plaintiff exited the vehicle and ran from the scene on foot. Officer Watkins chased Plaintiff on foot; gave a K-9 warning; and, when Plaintiff did not stop, released K-9 Blade, who bit Plaintiff several times. Officer Watkins then arrested Plaintiff, and the arrest was based on probable cause. In connection with the incident at issue, Plaintiff pleaded guilty to state charges of resisting arrest, evading arrest, theft of property, reckless driving, and driving on a revoked driver's license.

On August 27, 2004, Plaintiff filed the instant action. The case proceeded to a three-day bench trial on August 7-9, 2006. In his case-in-chief, Plaintiff offered the testimony of nine witnesses—Sgt. Corless Cooper; James A. Nichols; Lt. Charles Russell; K-9 Supervisor Nathan Vaughn (by deposition); Capt. Mike Williams (by deposition); Chief Steve Parks; Dr. David Wharton, Plaintiff's treating physician at Erlanger's Emergency Room; Special Investigator Jeff Lancaster; and Plaintiff Stone himself. Defendants presented five witnesses—Communication Supervisor Patricia Matthews; Detective Joseph Shaw; Sgt. Derrick Stewart; Sgt. Kim Reavley; and Defendant Officer Watkins.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having reviewed the testimony of the witnesses and considered the exhibits introduced at trial, the arguments and pleadings of counsel for the parties, the post-trial briefs, and the applicable law, the Court, pursuant to Federal Rule of Civil Procedure 52(a), now enters the following findings of fact and conclusions of law.

### A. Excessive Force Claim Against Officer Watkins

#### 1. *Standard for Determining Use of Excessive Force*

Plaintiff's excessive force claim is brought pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In order to prevail on this claim, Plaintiff must prove, by a preponderance of the evidence,[1] that Officer Watkins, acting under color of state law, violated his constitutional right to be free from excessive use of force in connection with his arrest. Officer Watkins does not dispute that he was acting under color of state law. What is disputed is whether

---

[1] Plaintiff must prove his § 1983 claim by a preponderance of the evidence. *See Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006) ("Appellants are required to prove their § 1983 and state-law claims by a preponderance of the evidence"). A preponderance of the evidence means the greater weight of the evidence. "It is that evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then the plaintiff has not met his . . . burden of proof." *Smith v. United States*, 726 F.2d 428, 430 (8th Cir. 1984).

excessive force was used against Plaintiff during his arrest in the early morning of July 9, 2004.

In *Graham v. Connor*, 490 U.S. 386 (1989), the United States Supreme Court held that

> a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of his person . . . [is] properly analyzed under the Fourth Amendment's "objective reasonableness" standard . . . .

*Id.* at 388. The *Graham* Court went on to observe that whether the amount of force used to effect an arrest is "reasonable" under the Fourth Amendment requires

> careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

The *Graham* Court further noted that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97 (citations omitted).

As will be more fully explained below, the ultimate factual issue in this case is whether, after Plaintiff Stone surrendered and was handcuffed, Officer Watkins encouraged his K-9 partner Blade, who was with him on the night in question, to continue to bite or otherwise attack Mr. Stone. If not, then Plaintiff is barred from recovery. If so,

and given the extent of injuries Plaintiff testified were inflicted on him post-subdual, then it would appear that Officer Watkins employed a legally impermissible quantum of force against the Plaintiff. *See, e.g.*, *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) ("[N]o particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control.").

        2.    *Application of* Heck v. Humphrey

Before addressing itself to the trial testimony bearing on the issue of whether Officer Watkins employed excessive force against Plaintiff Stone while effecting his arrest on the morning of July 9, 2004, the Court must revisit an issue which was addressed, but not resolved, in the Memorandum [Court Doc. No. 39] accompanying its Order ruling on Defendants' Motion for Summary Judgment [Court Doc. No. 40]. That issue is whether Plaintiff's § 1983 claim of excessive force against Officer Watkins is barred by virtue of his plea of *nolo contendere* to charges of resisting arrest and evading arrest, which he entered in the Criminal Court of Hamilton County, Tennessee, on or about April 5, 2005, and which arose out of the incident at issue in this lawsuit.[2]

The parties have stipulated that Plaintiff Stone did, in fact, enter such pleas [*see* Final Pretrial Order, Court Doc. No. 66], and Defendants have contended that, based upon the doctrine set forth in *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005), which is, in turn, based upon the rule announced by the United States Supreme Court in *Heck v.*

---

[2] Although this issue has previously been referred to by the Court [Court Doc. No. 39] and the parties [Court Doc. Nos. 22, 33] as collateral estoppel, the issue is actually whether *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's § 1983 excessive force claim. The doctrine of collateral estoppel and the application of *Heck* are two separate legal principles, and the application of *Heck* is the only principle which has been asserted in this case.

*Humphrey*, 512 U.S. 477 (1994), Plaintiff Stone is barred from pursuing his excessive force claim in this lawsuit because his success in this lawsuit would necessarily imply the invalidity of his earlier state convictions. "*Heck* bars § 1983 plaintiffs from advancing claims that, if successful, 'would necessarily imply the invalidity' of a prior conviction or sentence." *Cummings*, 418 F.3d at 682 (quoting *Heck*, 512 U.S. at 487). Thus, if Plaintiff's success on his excessive force claim "would necessarily imply the invalidity" of his prior convictions for resisting and evading arrest, then *Heck* bars him from advancing this excessive force claim. *Heck*, 512 U.S. at 487.

In *Swiecicki v. Delgado*, 463 F.3d 489 (6th Cir. 2006), the U.S. Court of Appeals for the Sixth Circuit examined a § 1983 excessive force claim to determine whether it was barred by *Heck* as a result of finding of guilt as to a state law charge of resisting arrest. The Court explained that, under Ohio law, the lack of excessive force by an officer before a suspect begins resisting arrest is a critical element of the crime of resisting arrest. *Id.* at 494. As a result, any § 1983 claims based on such force applied before the suspect began resisting arrest would be barred by *Heck*, as the success of the § 1983 claim as to pre-resistance force would negate an element of the crime of resisting arrest and necessary imply the invalidity of the conviction. *Id.* at 494-95. The Court noted, however, that Ohio law provides that the lack of excessive force by an officer *after* the suspect began resisting arrest is not an element of the crime of resisting arrest and, as a result, the use of excessive force after the suspect began resisting arrest would not prevent a conviction for resisting arrest. *Id.* at 494. Accordingly, any § 1983 claims based on such force applied after the suspect began resisting arrest would not be barred by *Heck*, as the success of the

§ 1983 claim as to that force would not negate any element of the crime of resisting arrest and, therefore, would not necessarily imply the invalidity of the conviction. *Id.* at 494-95.

Although instructive, *Delgado* is distinguishable from the instant case because of differences between Ohio law and Tennessee law. Specifically, unlike Ohio law, the offense of resisting arrest under Tennessee law does not include the element that the suspect must be free from pre-resistance excessive force. *See* Tenn. Code Ann. § 39-16-602(a).[3] Instead, under Tennessee law, an officer's use of pre-resistance excessive force is a statutory defense to the crime of resisting arrest. Tenn. Code Ann. § 39-11-611(e)[4]; *State v. Tidwell*, No. 01C01-9807-CC-00288, 1999 WL 436840, at *3 (Tenn. Crim. App. June 30, 1999) ("The legality of the arrest is not relevant to the determination of whether the defendant committed the offense of resisting arrest, unless the defendant is claiming self defense against excessive force from officers.").

Prior Sixth Circuit cases suggest, however, that the reasoning of *Delgado* applies equally to state laws under which pre-resistance excessive force is an affirmative defense

---

[3] It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer . . . .

Tenn. Code Ann. § 39-16-602(a).

[4] The threat or use of force against another is not justified to resist a halt at a roadblock, arrest, search, or stop and frisk that the person knows is being made by a law enforcement officer, unless:

(1) The law enforcement officer uses or attempts to use greater force than necessary to make the arrest, search, stop and frisk, or halt; and

(2) The person reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary.

Tenn. Code Ann. § 39-11-611(e).

rather than an element of the crime of resisting arrest. For example, in *Roberts v. Anderson*, No. 05-6828, 2007 WL 79057, at *6 (6th Cir. Jan. 9, 2007), the Court explained that, "under Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force." Similarly, in *Cummings*, 418 F.3d at 683, the Court held that "*Heck* bars [Plaintiff's] excessive force claim" because Plaintiff "could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge." Importantly, both *Roberts* and *Cummings* dealt only with allegedly excessive force that was exerted before the suspect began to resist arrest or that was inextricably intertwined with the suspect's resistance. *Roberts*, 2007 WL 79057, at *2 ("Plaintiff alleged that he never resisted arrest or threatened the officers, except in self defense after the beatings began."); *Cummings*, 418 F.3d at 682-83 ("The struggle between [Plaintiff] and the officers gave rise to both [Plaintiff's] assault conviction and the excessive force claim, and the two are inextricably intertwined.").

When faced with situations in which the allegedly excessive force was applied after the suspect began resisting arrest and was not inextricably intertwined with the suspect's resistance, other district courts in this circuit have used reasoning similar to that in *Delgado* and have allowed § 1983 excessive force claims to go forward as unaffected by *Heck*. *See, e.g.*, *Potvin v. City of Westland Police Dep't*, No. 05-CV-70291, 2006 WL 3247116, at *9 (E.D. Mich. Nov. 7, 2006) ("Although Plaintiff pleaded guilty to a resisting arrest charge . . . , *Heck* does not bar any excessive force that occurred after Plaintiff had been

arrested."); *Schreiber v. Moe*, 445 F. Supp. 2d 799, 814 (W.D. Mich. 2006) ("This portion of the excessive force claim [alleging that the officer kicked Plaintiff while he was handcuffed and in custody] is not, however, barred by *Heck* because it is not inextricably intertwined with the parties' initial altercation and [Plaintiff's] state court misdemeanor conviction.").

In the instant case, although Plaintiff testified unequivocally at trial that he absolutely did not resist arrest in any way, he pleaded *nolo contendere* to resisting arrest in the underlying criminal case. In determining the applicability of *Heck* in a § 1983 case, a *nolo contendere* plea in prior state criminal proceedings has the effect of a guilty plea. *See, e.g.*, *Shelton v. City of Taylor*, 92 F. App'x 178, 183 (6th Cir. 2004); *Nicholson v. City of Westlake*, 20 F. App'x 400, 402 (6th Cir. 2001); *Dayton v. Kabot*, No. 4:05-CV-75, 2005 WL 2248355, at *1 (W.D. Mich. Sept. 14, 2005); *see also Sandul v. Larion*, 52 F.3d 326, 1995 WL 216919, at *4 (6th Cir. Apr. 11, 1995); *Walker v. Schaeffer*, 854 F.2d 138, 142-43 (6th Cir. 1988). Thus, because Plaintiff, in effect, pleaded guilty to resisting arrest, and a judgment was entered accordingly, the Court must accept that Plaintiff did resist arrest. *See Wilson v. Johnson*, No. 3:04-CV-59, 2005 WL 2417057, at *8-9 & n.6 (E.D. Tenn. Sept. 30, 2005). Accordingly, under the reasoning of *Delgado* and the other cases discussed above, to the extent that Plaintiff's § 1983 claim is based on allegedly excessive force that was applied prior to his resistance or that was inextricably intertwined with his resistance, *Heck* would bar the assertion of such claim. To the extent, however, that Plaintiff's § 1983 claim is based on allegedly excessive force applied after his resistance, *Heck* would not bar the assertion of such claim.

When considering this issue in the context of Defendants' Motion for Summary Judgment, the Court relied on Plaintiff's statement in his deposition that he was "not claiming that [Officer Watkins] didn't use the right amount of force at the beginning" [Memorandum of November 15, 2005, Court Doc. No. 39 at pp. 17 and 19]. From this statement, and at that juncture, the Court was unable to determine whether Plaintiff was seeking to bifurcate the incident which gives rise to this lawsuit into a pre-and post-subdual phase and therefore found that Defendants had failed to demonstrate that no genuine issue of material fact existed, thereby resulting in their motion for summary judgment on this issue being denied.

Viewing the testimony adduced at trial in the light most favorable to Plaintiff, the Court finds that the allegedly excessive force at issue in this case occurred after Plaintiff resisted arrest. Accordingly, the doctrine announced in *Heck*, as further clarified in *Delgado*, *Cummings*, and other cases, does not bar Plaintiff's § 1983 excessive force claim against Officer Watkins.

### 3. *Trial Evidence Regarding Excessive Use of Force*

Having disposed of the issue of a bar to Plaintiff's claim under *Heck v. Humphrey*, the Court will now address itself to the evidence presented at trial which bears on whether Officer Watkins employed excessive force against Plaintiff Stone in the course of his arrest. By far the most significant of such evidence, of course, is the testimony of Plaintiff Stone and Officer Watkins, the only persons who were on the scene to witness what transpired during the critical encounter which resulted in Plaintiff's Stone apprehension and arrest.

The Court bases the following summary of the relevant evidence both on the Court's contemporaneous notes taken during the course of testimony at trial and on unofficial

-10-

transcripts of the testimony of Plaintiff Stone and Officer Watkins. Where language is recited within quotation marks, it is from the unofficial transcripts.

Although there is agreement on certain points, there is significant conflicting evidence between Plaintiff's version of events and Officer Watkins' version of events. The parties stipulate that probable cause existed for Plaintiff's arrest. The parties further stipulate that the injuries sustained by Plaintiff occurred during his apprehension and arrest on July 9, 2004. Both Plaintiff and Officer Watkins testified that Plaintiff ignored Officer Watkins' emergency lights and that once Plaintiff pulled over, he exited the vehicle and fled from the scene. At this point, however, the testimony of Plaintiff and of Officer Watkins begin to diverge in a dramatic and legally significant fashion.

According to Plaintiff Stone, he got off work around 5:00 p.m.and went to a bar.[5] After drinking at least five beers in approximately two hours, Plaintiff and his girlfriend left the bar around 7:30 p.m. Plaintiff testified that he and his girlfriend got into an argument on their way home from the bar. A police officer activated his emergency lights and Plaintiff's girlfriend, who was driving the vehicle, pulled over. Plaintiff, who was on probation, got out of the vehicle and ran because he did not want to go back to jail.

At some point later that evening, Plaintiff stole a vehicle from the Highway 11 area. Plaintiff drove to Rossville Boulevard and stopped at a gas station. As Plaintiff was driving away from the gas station, Officer Watkins' fell in behind him and activated his emergency equipment. Plaintiff ignored the signal to stop his vehicle and instead led Officer Watkins on a high speed traffic chase. Following a lengthy chase, Plaintiff eventually pulled over,

---

[5] Plaintiff did not explain how he got from his place of employment in the Rossville Boulevard area to the Lucky Seven Bar in the Tiftonia area.

running into a curb and pole, and exited the vehicle on foot. Plaintiff ran from Officer Watkins on foot for a short distance. Regarding the automobile and foot chase, and although, as discussed above, he later entered a plea of *nolo contendere* to both charges, during his trial testimony, Plaintiff admitted evading arrest, but denied resisting arrest.[6]

According to Plaintiff Stone's version of what happened next, as he was running he "heard Officer Watkins yell at him to halt or he would release the dog." In the next instant, Stone stepped off the road into a hole and fell forward onto the ground in a prone position—a position in which he states he remained until emergency medical personnel transported him to the hospital. Plaintiff states that as he fell, K-9 Blade grabbed his elbow and began yanking and pulling his arm. Officer Watkins came up on his left side, kicked him in the ribs,[7] and stomped on his head. Plaintiff contends that he sustained a six centimeter laceration as a result of Officer Watkins stomping on his head.[8] After he was stomped, he turned his head, and Blade released his arm and grabbed his jaw. Plaintiff testified that he remained laying in a prone position on the ground, offering no resistance, until he was transported to the hospital. Plaintiff further testified that he offered no resistance, either to the canine or Officer Watkins, and he did not possess any weapons, any tools, or a wrench.

---

[6] Plaintiff testified that he ran from Officer Watkins because he did not want to have his probation revoked and go back to jail for fifteen years.

[7] Although the BEH Emergency Department Report does not reflect that Plaintiff complained of pain to his ribs, it does reflect that there was some tenderness to palpation of the left ribs (Jt. Exhibit 7, Collective).

[8] The BEH Emergency Department Report also reflects that a six centimeter laceration, which goes down to just above the skull in the left parietal occipital area and required staples to close it, appeared to be a laceration from a fall rather than a dog bite (Jt. Exhibit 7, Collective).

Significantly, Plaintiff Stone testified that after he surrendered, Officer Watkins continued to instruct the canine to bite him. More specifically, Officer Watkins said something to Blade; the dog released Plaintiff; and Officer Watkins placed Plaintiff in handcuffs. Then, at the urging of Officer Watkins, the dog bit Plaintiff's shoulder, the left side of his neck, and his left ear, which was partially ripped from his head. Plaintiff would have tried to defend himself if he had not been handcuffed. However, and most significantly, Stone testified that at the time the canine inflicted most of the wounds, he had surrendered and was handcuffed. This, Stone testified, accounted for the fact that he sustained no defensive wounds—that is, to his arms or hands—as a result of the attack.[9]

On cross-examination, Plaintiff denied that he was attempting to free himself from the dog when he received what he claimed was the first bite—the bite on his elbow. Plaintiff also denied having an adjustable wrench on his person on the night in question. Plaintiff maintained that, when the dog bit his ear, both of his hands were handcuffed. He reiterated his direct testimony that, when he went to the ground, K-9 Blade immediately grabbed his right elbow and that Officer Watkins walked up to his left side, kicked him in the ribs, and stomped on his head. Plaintiff then turned his head to the right side and K-9 Blade grabbed his cheek. Officer Watkins called the dog off and then handcuffed Plaintiff. Plaintiff reiterated that he was never in a seated position after he hit the ground; that he was handcuffed and laying face down during the entire time of this event; that he never had a wrench or swung a wrench at Officer Watkins or K-9 Blade; and that he did not see

---

[9] The Court observes that the medical reports refer to some superficial wounds and some superficial abrasions on the lateral aspect of the arm near the lateral puncture site (Jt. Exhibit 7, Collective).

Officer Watkins with a wrench. Stone also reiterated that, immediately preceding the canine bites, he did not attempt to fight off the dog and did not resist arrest.

Officer Watkins described the critical encounter in his trial testimony as follows.[10] When Plaintiff did not stop running, K-9 Blade was released and he "lunged off all four feet and struck [Plaintiff] with his front paws and canines in the left shoulder blade area, upper back." Plaintiff lost his balance, "toppled forward and off of the side of the road landing on his rear and back." As Blade started circling Plaintiff, Officer Watkins came up on Plaintiff's left side, ordering him to stop resisting. Plaintiff sat up and attempted to swing the wrench across his body in his right fist in an attempt to strike Officer Watkins. By this time, Blade had circled around to Plaintiff's back. Reacting to Plaintiff's movement, Blade caught him in the left side of the head—the front incisors were in front of his ear, the lower jaw clenching the back of the head—and the force of the canine's grip began to peel Plaintiff's ear away from his head. Officer Watkins ordered Blade to release Plaintiff. Blade complied with the order, and Officer Watkins approached Plaintiff to handcuff him.

Before he could be handcuffed, however, Plaintiff came up in a seated position and swung the wrench, at which time Officer Watkins put his boot in Plaintiff's chest area and

---

[10] The Court notes that Officer Watkins' testimony differed from his report in a number of particulars. One of the main differences between the two was that his report reflected that Plaintiff was grasping a wrench by the handle and wildly swinging it in an attempt to strike Officer Watkins and K-9 Blade. During his live testimony, Officer Watkins testified Stone was "grasping the wrench by the middle in his fist and used it either as a blunt object or brass knuckles or a role of dimes, that sort of motion trying to punch and strike with it." In his written report, Officer Watkins stated that, once Plaintiff dropped the wrench, he effected his arrest, but in his trial testimony, Officer Watkins testified that Plaintiff attempted to resist again, causing K-9 Blade to re-engage and bite Plaintiff's face. The Court is mindful that Officer Watkins reported that Plaintiff exited the vehicle with a wrench in his hand, but that the videotape of the incident did not reflect that Plaintiff had a wrench in his hand. The Court also observes that Officer Watkins' report included some other inaccurate information. For example, in his report, Officer Watkins states that he ordered Plaintiff to drop the wrench, but Officer Watkins testified that he did not know it was a wrench until he approached Plaintiff after he was down on the ground.

pushed him away and back down onto the ground. Due to the attempted assault on Officer Watkins, Blade re-engaged, and Officer Watkins let Plaintiff and the dog "fight it out." When the dog bit Plaintiff on the left trapezium area, Officer Watkins called him off, and Blade circled around and grabbed Plaintiff's right forearm at the elbow. At that time, Plaintiff dropped the wrench, and Officer Watkins grabbed his left arm, rolled him over on his stomach, and handcuffed him.

Officer Watkins next testified that "I gained control of his left arm and was placing the handcuff on his left arm, I gave the dog the order to release his arm, right arm. The dog released, went into a down position. Mr. Stone's right arm was stretched out in front, almost in front of him in his prone position, and the dog released and was down right in front of Mr. Stone. As I was gaining control of his right arm, attempting to put on handcuffs, his right arm was underneath him, and he attempted to rise up again in an attempt to flee or in an attempt to assault me, the dog reacted and caught Mr. Stone in the face, which I immediately advised the dog to let go and back off and began yelling at the dog to keep the dog away from Mr. Stone and was able to control Mr. Stone and get him in handcuffs fully."

In his report, Officer Watkins wrote, and later testified, that the stolen vehicle driven by Stone had a freshly popped ignition; that the ignition was dropped below the dash and the wires were cut and wired together; and a "slim jim" burglary tool[11] was in the front seat. The Court observes that, although Plaintiff pleaded *nolo contendere* to possession of burglary tools, during this trial he adamantly denied that he had possessed the slim jim or

---

[11] A slim jim is a tool used in automobile theft. *United States v. Ashley*, 943 F.2d 53, 1991 WL 169335, at *1 n.3 (6th Cir. Sept. 4, 1991).

used it—indeed, he denied possessing any tools whatsoever. In addition, Plaintiff's statement to the Internal Affairs investigator that he drove the car in a normal manner and then parked it directly contradicts the videotape of the chase and his trial testimony. (Plaintiff's Exhibit #8, at 3.)

    4. *Findings of Fact and Conclusions of Law Regarding Trial Evidence*

As can be seen from the foregoing summaries of the testimony of Plaintiff Stone and Officer Watkins, the Court is presented with a situation which includes two diametrically opposed stories regarding the critical events from the only two witnesses who were in a position to know what actually transpired. The only evidence which was presented to the Court that could have provided a totally objective and unbiased account of the events of the night in question—the videotape—does not adequately capture and record the critical moments of the encounter between the Plaintiff and Officer Watkins so as to permit the Court to determine which version of those events is more accurate.

When, as is the case here, the relevant testimony of key witnesses is so fundamentally contradictory on the key underlying facts of the critical events, the Court is obliged to assess the credibility of the witnesses offering the conflicting testimony, in an effort to assign more credit to one's version of events than that of the other. In this case, the Court observed both Plaintiff Stone and Officer Watkins carefully during their testimony and, indeed, throughout the course of the trial. In each case, while testifying, both appeared to be attempting to answer the questions posed to them truthfully, and any intrinsic contradictions or inconsistencies in their testimony were regarded by the Court as minor and inconsequential with respect to extrinsic matters. As has been pointed out above, there were reasons to treat the testimony of both witnesses with some skepticism.

On balance, however, the Court was unable to conclude that either witness's version of events should be accepted wholesale as being clearly more reliable so as to discount the other's version. Rather, the Court believes it to be more likely that, in the midst of the chaotic and violent seconds required to apprehend and subdue Plaintiff Stone, both Plaintiff's and Officer Watkins' ability to perceive and to later recall and recount the precise nature and sequence of such events was severely limited and impaired.

Placing Plaintiff's testimony on one side and Officer Watkins' testimony on the other side, the scales of justice are equally balanced and, due to the lack of any other credible evidence, the scales remain balanced. The simple fact is that, in the present case, the Court cannot say upon which side the proof weighs heavier. Since it cannot be said upon which side the evidence weighs heavier, Plaintiff has not met his burden of proof. *Smith v. United States*, 726 F.2d 428, 430 (8th Cir. 1984).

Plaintiff's burden at trial was to demonstrate that, under the facts and circumstances of his arrest, the degree of force used was unreasonable because he did not pose an immediate threat of safety and was not actively resisting arrest.[12] *See Graham v. Conner*, 490 U.S. 386, 396 (1986). Plaintiff failed to offer satisfactory proof sufficient to demonstrate by a preponderance of the evidence that the injuries he received occurred after his surrender and/or arrest or that the force used was unreasonable and not proportional in response to his resistance. Consequently, Plaintiff has not met his burden of proof. Accordingly, Plaintiff has not prevailed on his claim against Officer Watkins for excessive use of force under 42 U.S.C. § 1983.

---

[12] Plaintiff acknowledged at trial that he attempted to *evade* arrest.

### B. Deliberate Indifference Claims Against Chief Parks and the City of Chattanooga

Plaintiff also asserted a claim against Chief Parks and the City on the ground that these defendants maintain a policy, custom, or practice of condoning unlawful attacks on citizens by Officer Watkins and that they maintained policies of supervision and training that were deliberately indifferent to the risk Officer Watkins would use excessive force when arresting citizens.

It is only when a constitutional deprivation is the result of government policy or custom that there is governmental liability. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("[A] municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation." (internal quotation marks and citation omitted)). Likewise, to prevail on his supervisory liability claim against Chief Parks, Plaintiff must demonstrate a causal link between Chief Parks' inaction and the particular constitutional injury Plaintiff has suffered. *See Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999). Thus, a constitutional violation must occur for municipal or supervisory liability to exist. *McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor."); *Voyticky v. Village of Timberlake*, 412 F.3d 669, 679 (6th Cir. 2005) (citing, *inter alia*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."). As a result, to prevail on his claims against the City or Chief Parks, Plaintiff must demonstrate that a constitutional violation resulted from official government policy, custom,

or practice or from Chief Parks' inaction, respectively. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

The Court has already concluded, as explained above, that Plaintiff did not prove that he suffered a constitutional violation at the hands of Officer Watkins. Accordingly, in the absence of proof of a constitutional violation by Officer Watkins, the Court must conclude, as a matter of law, that there is no liability on the part of the City for an official government policy, custom, or practice or on the part of Chief Parks for inaction.

### III.    CONCLUSION

For the aforementioned reasons, the Court concludes that Defendants Officer Watkins, Chief Parks, and the City of Chattanooga are not liable to Plaintiff under § 1983. Accordingly, it is **ORDERED** that all claims brought in this action by Plaintiff Stone against Defendants Officer Watkins, Chief Parks, and the City of Chattanooga are hereby **DISMISSED WITH PREJUDICE**. Judgment will enter in favor of Defendants Officer Watkins, Chief Steve Parks, and the City of Chattanooga. Once judgment has been entered, the Clerk of Court is **ORDERED** to **CLOSE** this case.

SO ORDERED.

ENTER:

*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE